# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| ANTHONY GENO MARTINSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV422-012 |
| SOUTHERN CORRECTIONAL MEDICINE, *et al.* | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

*Pro se* plaintiff Anthony Geno Martinson, an inmate at Liberty County Jail, has filed a complaint concerning the conditions of his confinement. *See generally* doc. 1. The Court granted him leave to proceed *in forma pauperis* and he complied with the Court's Order. *See* docs. 8 & 9. He has also filed several other motions. *See* docs. 11-13. The Court will proceed to screen his Complaint pursuant to 28 U.S.C. § 1915A.

Martinson's Complaint alleges facts that might implicate several different claims. He first alleges that he was held for approximately seven days, from December 20-27, 2021, in an unsanitary cell, "with

visible roaches and flys [sic] in it, and maggots growing on the side of the sink," without a "mat" and without any opportunity to clean the cell. *See* doc. 1 at 5. He also alleges that during that seven-day period one of the defendants, Lt. Barber, refused to allow Martinson to use the phone or shower. *Id*. He alleges that he was later denied access to a phone "because [Major Krumnow] claimed [he] broke a rule regarding three[-]way calling that does not exist." *Id*. at 6. He surmises, based on an appointment to call a "representative from the local newspaper," that the phone restriction is "an attempt to censor [him] and prevent [him] from speaking to the media any further." *Id*.

Martinson also alleges that "[o]n Tuesday, December 21st 2021, SCM also known as Southern Correctional Medicine, informed [him] that [his] ear drums had ruptured, and [his] blood pressure and pulse were abnormally high." Doc. 1 at 5. He alleges that "Before going to jail, [he] never had any medical issues like that." *Id*. Moreover, he alleges that "SCM was informed of all [his] allergies," but "they" are still including items he's allergic to in his meals, so he has "been unable to eat all of [his] meals." *Id*.

Finally, Martinson alleges that prison staff have, on multiple occasions, denied him access to "forms" and "paperwork" to lodge administrative grievances and "to request a public defender." Doc. 1 at 5-6. He concludes by stating that he is "also certain that moving forward there will be even more problems and [he] will document them each time and send them in as further evidence." *Id.* at 6. As relief he wants the "court to order the termination of all individuals involved as well as the termination of the contract between the Liberty County Jail and Southern Correctional Medicine." *Id.* at 7. He also seeks monetary damages from Southern Correctional Medicine. *Id.*

Martinson's allegations related to the availability of grievance forms fails to state a claim. There is no constitutional right to jail grievance procedures, so any procedural problems arising from their processing cannot support a § 1983 claim. *See Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005)[1]; *see also, e.g., Adams v. Rice*, 40 F.3d 72,

---

[1] The constitutional issues involving conditions of confinement for *pretrial detainees*, and the case law addressing those issues, is not precisely the same as the law involving the conditions to which *prisoners* are subjected as punishment. While penological interests may provide constitutional justification for the conditions of confinement of convicted prisoners, such interests are irrelevant to pretrial detainees, who "may not be punished prior to an adjudication of guilt . . . ." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). As such, cases addressing conditions of confinement for

75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). To the extent that he seeks any relief based on any defendant's refusal to provide him with "grievance form[s]," doc. 1 at 5-6, his claim fails.

Martinson's claim that he was denied "paperwork to request a public defender," doc. 1 at 6, also fails to state a claim upon which relief can be granted. The Supreme Court has explicitly stated that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 213 (2008). Since Martinson does not allege that he has been denied counsel, despite having appeared before a judicial officer, he has failed to allege a violation of his Sixth Amendment rights.

---

convicted prisoners are not directly applicable here. However, cases involving prisoners may be helpful in that they provide a baseline for potentially appropriate treatment of pretrial detainees, because "pretrial detainees . . . retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Id.* at 545.

4

Martinson's claims concerning limitations on his access to a telephone are also insufficient. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution . . . nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside[.]'" *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (citations omitted); *Washington v. Reno*, 35 F.3d 1093, 1099-100 (6th Cir. 1994); *see also Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984) ("there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment."). But inmates do not have a "right to unlimited telephone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989) (citing *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982)). Courts have held that denial of access to a phone violates the Constitution in limited circumstances, including "(1) where it significantly affected the detainee's ability to receive calls from his attorney and to prepare his defense, [cit.], and (2) where telephone access was denied almost entirely or on a long term basis with no reasonable relation to a valid security interest." *Tucker v. Randall*, 840 F. Supp. 1237, 1246 (N.D. Ill. 1993) (citations omitted); *see also Newkirk v. Sheers*,

5

834 F. Supp. 772, 792 (E.D. Pa. 1993) ("[S]o long as there is not an outright policy that prohibits telephone use by pretrial detainees, any restriction or limitations that serve a legitimate governmental purpose, and are not punitive, are constitutional . . . .") Martinson has not alleged any sufficiently significant denial of access to a telephone to support a § 1983 claim.

Martinson's allegation that he was held in an unsanitary cell, without proper bedding, and without being allowed to shower for seven days implicates an Eighth Amendment conditions-of-confinement claim. Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition. *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir.

2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials."). "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

The Complaint's allegation that Lt. Barker "made" Martinson sleep in the allegedly inadequate cell suggests, even if it does not expressly allege, that he was aware of the conditions. The more substantial defect is that the alleged conditions are not sufficiently serious to state a claim. *See, e.g., Jaros v. Ill. Dept. of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012) (". . . limiting inmates to weekly showers does not violate the Eighth Amendment."); *Fischer v. Ellegood,* 238 F. App'x 428, 433 (11th Cir. 2007) (affirming summary judgment because plaintiff "has given us no reason to believe that sleeping on the floor . . . or being denied showers amounts to . . . an Eighth Amendment violation in their own right—at least not when the duration is only five days."); *Brown v. Withrow*, 985 F.2d 559, 559 (6th Cir. 1993) (rats, roaches, and ants

present in a cell did not violate the Constitution); *Robinson v. Ill. State Corr. Ctr. (Stateville) Warden*, 890 F. Supp. 715, 720 (N.D Ill. 1995) (roach and bed bug infestation, without any allegation of injury, failed to support objective component of an Eighth Amendment claim); *Mckissick v. Owens*, 2013 WL 1213087, at *4 (S.D. Ga. Feb. 21, 2013) ("[L]imited periods of incarceration in unsanitary conditions are generally insufficient to evidence an Eighth Amendment violation."). If Martinson believes there are additional facts which might support the claim that the conditions of his confinement were unconstitutional, he is free to assert them in his amendment, discussed below.

Finally, Martinson's allegations concerning allegedly defective medical care are also insufficient. "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotations and citations omitted). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner must show that: (1) he had a serious medical need; (2) defendants were deliberately indifferent to that need; and (3) some injury

8

was caused by defendants' indifference. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Martinson's allegation that jail medical staff diagnosed him with conditions—*i.e.* a ruptured eardrum and high blood pressure—that he either did not have, or was not aware that he had prior to his incarceration, does not allege any indifference or causal relationship between those conditions and his *confinement*, much less any action or inaction by medical staff. His allegation concerning lack of attention to his food allergies does not assert that any particular defendant was deliberately indifferent to his allergies or that those allergies are sufficiently serious. *See, e.g., Vartinelli v. Aramark Corr. Servs., LLC*, 2019 WL 1402653, at *6-7 (E.D. Mich. Mar. 28, 2019) (discussing circumstances where food allergies might amount to "serious medical need"). His claims related to medical care, therefore, fail.

Despite Martinson's failure to state any claim upon which relief may be granted, he is entitled to an opportunity to amend his Complaint. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citation omitted) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the

action."). Accordingly, Martinson is **DIRECTED** to file an Amended Complaint no later than twenty-one days from the date of this Order. He is advised that his amended complaint will supersede his original pleadings and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Failure to comply with the Court's instructions may result in a recommendation of dismissal. *See* Fed. R. Civ. P. 41(b).

Martinson has moved for court-appointed counsel. *See* doc. 11. He does not, however, have any constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a

trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). Nothing in Martinson's pleadings suggest any "exceptional circumstances." His motion is, therefore, **DENIED**. Doc. 11.

Martinson has also filed a "Motion for Request for a Jury Trial." Doc. 12. It is not entirely clear from that pleading whether Martinson wishes to establish that this case, presuming it necessitates a trial, is tried by a jury, or whether he wishes an immediate trial. *See id.* If he merely seeks a jury trial at an appropriate time, he would be entitled to one. *See, e.g., Caban-Wheeler v. Elsea*, 71 F.3d 837, 844 (11th Cir. 1996) ("A legal action under § 1983 entails the right to a jury trial . . . ."). To the extent that he seeks an immediate jury trial, such a request is not yet

ripe, as no defendant has even been served. His motion is, therefore, **DISMISSED** without prejudice to refile at an appropriate time. Doc. 12.

Finally, he moves for leave to appear at any proceeding in this case "over video." Doc. 13. While Martinson's appearance via a video teleconference, or even via telephone, may be appropriate in some circumstances, the Court will not authorize such a departure from its standard practice in general. Moreover, no hearing has been scheduled in this case. If any hearing, or other proceeding permitting or requiring plaintiff's attendance, is set in this case, the Court will entertain a specific request that Martinson be allowed to appear through some remote means. The current motion is, therefore, **DISMISSED** without prejudice. Doc. 13.

In summary, Martinson is **DIRECTED** to file an Amended Complaint addressing the defects in his claims, discussed above, no later than twenty-one days from the date of this Order. His Motion to Appoint Counsel is **DENIED**. Doc. 11. His Motion for Jury Trial is **DISMISSED** without prejudice. Doc. 12. Finally, his Motion for Request for Reasonable Accommodation is **DISMISSED** without prejudice. Doc. 13.

Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects an average monthly balance of $564.15 over the six-month period prior to the date of his Prison Account Statement. Doc. 7. He therefore owes a $112.83 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Furthermore, Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[2]

**SO ORDERED,** this 24th day of February, 2022.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2]   The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.